UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JERIEL ALEXANDER AND SAPPHIRA ALEXANDER | : | |
| | : | No. 3:20-cv-1406-VLB |
| Plaintiffs, | : | |
| v. | : | January 3, 2023 |
| TOWN OF EAST HAVEN | : | |
| Defendant. | : | |

**MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Jerial and Sapphira Alexander ("Plaintiffs") sued the Town of East Haven (the "Town") alleging claims of obstruction of justice pursuant to 18 U.S.C. § 1519, violations of Plaintiffs constitutional rights under 42 U.S.C. § 1983, and intentional infliction of emotional distress under Connecticut state common law. Plaintiffs allege that the East Haven Police Department ("EHPD"), through its officers, falsified a police report by failing to properly report Plaintiffs' complaint against a United States Postal Service ("USPS") worker that allegedly forged their signature of a certified mail receipt. Plaintiffs allege that, after complaining about the falsified police report to the Department of Justice, EHPD officers began harassing them. Plaintiffs' suit names only the Town as a defendant.

Before the Court is the Town's motion for summary judgment on all claims. (Mot. for Summ. J., ECF No. 46.) With respect to Counts One and Three, the Town argues it is entitled to judgment as a matter of law because Plaintiffs cannot legally assert said claims against the Town under these theories of liability. With respect

to Count Two, the Town points to an absence of evidence to support the claim. Plaintiffs, who are proceeding pro se,[1] filed an opposition. (Opp., ECF No. 50.)

On October 27, 2022, the Court issued an order affording Plaintiffs an opportunity to supplement their opposition to the Town's motion for summary judgment because the Court could not determine whether Plaintiffs were sufficiently aware of the consequences of summary judgment and their burden in overcoming it. (Order for Suppl. Opp., ECF No. 54.) The Court afforded this opportunity out of an abundance of caution due to the Town's failure to provide proof of compliance with Local Rule of Civil Procedure 56(b), which requires sending a "Notice to Self-Represented Litigant Concerning Motion for Summary Judgment."[2] (*Id.* (citing to D. Conn. L. Civ. R. 56(b).) The Court afforded Plaintiffs twenty-one days from the date of the order to supplement their opposition. (*Id.*) Thereafter, Plaintiffs supplemented their opposition. (Suppl. Opp., ECF No. 56.)

For the following reasons, the Court grants the Town's motion for summary judgment.

[1] "Pro se" is a term used to identify a self-represented party.
[2] Rule 56(b) of the Local Rules of Civil Procedure provides:

> Any represented party moving for summary judgment against a self-represented party must file and serve, as a separate document, in the form set forth below, a "Notice to Self-Represented Litigant Concerning Motion for Summary Judgment." The movant shall attach to the notice copies of the full text of Rule 56 of the Federal Rules of Civil Procedure and of this Local Civil Rule 56.

The Local Rule provides the exact language of the notice that the represented parties are to send to self-represented litigants.

## I. BACKGROUND[3]

On October 18, 2017, Plaintiffs went to the EHPD to report a crime, where they met with Officer William Coppola. (Oct. 18, 2017 Incident Report, ECF No. 57 PDF pp.5–6; J. Alexander's Aff. ¶ 3, ECF No. 57; S. Alexander's Aff. ¶ 3, ECF No. 59.) Plaintiffs first spoke with Sergeant Kevin Klarman, who was the supervisor on duty, and then met with Officer Coppola, who took their report. (J. Alexander's Aff. ¶¶ 2–3; S. Alexander Aff. ¶¶ 2–3.) Plaintiffs claim to have overheard Sergeant Klarman make racially derogatory remarks about the black community. (Suppl. Opp. 2.) Officer Coppola drafted an incident report (the "October 18, 2017 Incident Report") purporting to memorialize the conversation he had with Plaintiffs. (Oct. 18, 2017 Incident Report.) The report provides that Mr. Alexander stated that a United States Postal Service ("USPS") Carrier "signed a certified letter" using Mr. Alexander's name, which confirmed the sale of his storage unit in Yonkers, New York. (*Id.*) Further, the report states:

> Upon arrival on scene, this Officer interviewed Alexander in the front lobby of the East Haven Police Department. Alexander stated that an unknown party forged a check that paid the overdue balance for his storage unit fees. Alexander later stated that this unknown party later sold his storage unit that contained approximately $7,400 worth of

[3] The following facts are taken from the Local Rule 56 statements of material facts and evidence cited by the parties. Local Rule 56(a)1 outlines the requirements for setting forth each material fact as to which the moving party contends there is no genuine issue to be tried. The party opposing summary judgment can respond the material facts listed by the movant in the 56(a)1 statement by either admitting or denying the fact.

> Each statement of material fact by a movant in a Local Rule 56(a)1 Statement or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial.

Local Rule 56(a)3. "Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1." *Id.*

> property belonging to himself and his some of his family members. Alexander was advised by this Officer to contact the Police Department in which his storage unit is located in order to file a report. Alexander stated that a confirmation letter of the sale of his storage unit was later sent to his residence via USPS and was a certified letter. Alexander stated that on August 24, 2017, a USPS Carrier forged his signature in order to deliver the letter. Alexander stated that he would be contacting USPS in order to open an investigation.

(*Id.*)

Plaintiffs were dissatisfied with the report of their conversation with Officer Coppola, which appears to focus primarily on the forged check information provided in the first portion of the report. Specifically, Plaintiffs allege the report was wrongfully altered by changing their complaint of signature forgery by the USPS Carrier to check forgery.[4] (Compl. 2, ECF No.1 ("Both Jeriel and Sapphira Alexander Notice the report was falsif[ied] by altering words from signature forgery to postal female carrier sign a check."); J. Alexander Aff. ¶ 6; S. Alexander Aff. ¶ 6.) Plaintiffs claim they spoke with Sergeant Klarman, who tried "to force" Plaintiffs to sign an affidavit, (J. Alexander Aff. ¶ 5, S. Alexander Aff. ¶ 5), which the Court assumes from context is an affidavit relating to the October 18, 2017 Incident Report.

On November 7, 2017, Mr. Alexander emailed Officer Coppola asking about this case. (Email Chain, ECF No. 57 PDF pp. 10–11.) On November 10, 2017, Officer

[4] It is difficult to understand Plaintiffs' complaints about the October 18, 2017 Incident Report, because it appears on the face of the incident report that Officer Coppola did report that Plaintiffs were complaining that a USPS Carrier forged their signature on a certified mail receipt, not a check. While there is a reference about a forged check, that reference is not related to the USPS Carrier's conduct, rather it appears to be connected with conduct that occurred beforehand. Regardless, whether the October 18, 2017 Incident Report was indeed falsified is not material for the purpose of this decision, as detailed below.

**Coppola responded that he was "still attempting to contact Ms. Romano" and "I will advise you when my contact progresses further." (*Id.*) Then on March 1, 2018, Mr. Alexander emailed Officer Coppola stating:**

> **So I read the police report I notice[d] two things were a mistake[.] In the statement I saw there was auto error stating that the unknown party forged a check? It was forge signature on a certified mail. The typer made mistake. The amount we lost after my real calculations was $10,000 value.**

**(*Id.* (capitalization modified).) On March 12, 2018, Officer Coppola responded: "Did you get a name of the person that forged the signature? Also can you[] email me an updated inventory list and approximate value of said items?" (*Id.*)**

**On March 12, 2018, Officer Coppola drafted a supplemental incident report, wherein he stated:**

> **On March 11, 2018, Alexander made it known to this Officer that he did not have a check forged. Alexander stated that a United States Postal Service employee forged a piece of certified mail addressed to him. Alexander later stated that an updated value of the inventory within the storage unit that was sold fraudulently is approximately ten thousand dollars in United States Currency ($10,000).**

**(Mar. 12, 2018 Suppl. Report, ECF No. 57 PDF p. 8.)**

**On June 8, 2018, Mr. Alexander emailed Officer Coppola stating "I read the report the statement has to written over. Why do I see the carrier sign and Check I mention it all the time she forge my signature on a certified mail. Not check I hope this is fix." (Email Chain.)**

**On June 22, 2018, Officer Coppola drafted another supplementary incident report where he states:**

> **It should be noted, Alexander's initial complaint was in fact for the forgery of a piece of certified mail by a Post Office employee. Alexander made it known to this Officer that the forgery was in fact of a piece of certified mail, not a check, as this Officer made an error in**

> the initial report indicating as such. Alexander never made contradictory statements to this Officer.

(June 22, 2018 Suppl. Report, Dkt. 48 PDF p.10.)

Plaintiffs state they did not receive a copy of the supplemental reports when they sought to collect all reports relating to his claims. (J. Alexander Aff. ¶ 7; S. Alexander Aff. ¶ 7.) Plaintiffs do not state when they went to collect reports relating to their claims. Nor do Plaintiffs rebut the statements contained in the supplemental reports.

Plaintiffs generally claim harassment by the EHPD. In support of this claim, Plaintiffs submitted their affidavits, where they state:

> EHPD Officers was making unreasonably unlawful stops to Plaintiffs Jeriel Alexander and Sapphira Alexander.
>
> EHPD Officers searched Plaintiff parked vehicles by using flashlights and k9 dogs without suspicions and probable cause.
>
> Plaintiffs overheard Officer Sgt. Kevin Klarman derogatory remarks about Plaintiffs calling the N word.
>
> A EHPD female officer was caught recording Plaintiff Jeriel Alexander on her cell phone while he was parked on High Street in East Haven, CT.

(J. Alexander Aff. ¶¶ 9–12; S. Alexander Aff. ¶¶ 9–12.) Plaintiffs provide additional allegations in their opposition, where they claim that Officer Coppola told them during a traffic stop following the incident to "stop talking on them, shut the F""k up." (Suppl. Opp. 3.) They also claim that the EHPD officers are not sufficiently trained in diversity and cultural sensitivity. (*Id.*) Plaintiffs provide no other information relating to the purported harassment by EHPD officers, nor do they provide any information about the EHPD training programs.

## II. STANDARD OF REVIEW

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007). "Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Coppola*, 499 F. 3d at 148 (citing to *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (hereinafter "*Liberty Lobby*")). But "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Wang v. Hearst Corp.*, 877 F.3d 69, 76 (2d Cir. 2017) (citing to *Liberty Lobby*, 477 U.S. 248)).

On a motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Green v. Town of E. Haven*, 952 F.3d 394, 405–06 (2d Cir. 2020) (citing to *Liberty Lobby*, 477 U.S. at 250). "Thus, in ruling on a motion for summary judgment, 'the district court is required to resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" *Id.*

**"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact . . . ."** ***Crawford v. Franklin Credit Mgmt. Corp.*****, 758 F.3d 473, 486 (2d Cir. 2014). "[W]here the nonmoving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by 'point[ing] to an absence of evidence to support an essential element of the nonmoving party's case."** ***Id.*** **(citation omitted). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."** ***Id.*** **(citing to** ***Celotex Corp. v. Catrett,*** **477 U.S. 317, 323 (1986)).**

> **A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient.**

***Welch–Rubin v. Sandals Corp.*****, No. 3:03-cv- 481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted);** ***Martinez v. State of Connecticut*****, 817 F. Supp. 2d 28, 37 (D. Conn 2011). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."** ***Hayut v. State Univ. of New York*****, 352 F.3d 733, 743 (2d Cir. 2003) (citing to** ***Liberty Lobby*****, 477 U.S. at 252)). Where there is no more than a scintilla of evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the**

record, summary judgment may lie. *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712, 727 (2d Cir. 2010).

A party's own affidavit may be enough to fend off summary judgment if it is based on personal knowledge and its credibility is buttressed. *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 53 (2d Cir. 1998) (reversing district court grant of summary judgment because district court did not give the party's affidavit any weight and where the affidavit was corroborated by consistent prior pleadings and testimony); *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (same).

Plaintiffs are proceeding *pro se* and the Court must read their pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003). However, "application of this different standard does not relieve plaintiff of [their] duty to meet the requirements necessary to defeat a motion for summary judgment." *Id.*

## III. DISCUSSION

Plaintiffs complaint raises three counts for: (1) obstruction of justice under 18 U.S.C. § 1519, (2) civil rights violation under 42 U.S.C. § 1983, and (3) intentional infliction of emotional distress under Connecticut state common law. The only defendant named in this action is the Town. The Court addresses below whether the Town is entitled to summary judgment with respect to each count of the complaint.

**A. Count I: Obstruction of Justice, 18 U.S.C. § 1519**

**Count One is raised under section 1519 of Title 18 of the United States Code for "obstruction of justice." The Town argues there is no private right of action under this statute and thus they are entitled to summary judgment on this count. Plaintiffs do not respond to the Town's argument. The Court agrees with the Town, section 1519 is a criminal statute that does not, expressly nor implicitly, provide a private right of action. *See Kalola v. Int'l Bus. Machs. Corp.*, No. 19CV9900(VB), 2019 WL 6879307, at *3 (S.D.N.Y. Dec. 16, 2019). Thus, the Town is entitled to judgment as a matter of law on Count One.**

**B. Count II: *Monell* Claim, 42 U.S.C. § 1983**

**Count Two is raised under section 1983 of Title 42 of the United States Code, wherein Plaintiffs allege the Town violated their First and Fourteenth Amendment rights. The Town argues Plaintiffs have no proof of a town policy that supported the actions alleged to have deprived Plaintiff's of their constitutional rights. In addition, the Town argues an absence of proof of a constitutional violation in the first instance. Plaintiffs argue that the interactions between them and EHPD officers constitutes evidence of a town policy of failing to properly train its police officers.**

**Under federal law, a municipality "may not be sued under section 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dept. of Soc. Servs. Of City of New York*, 436 U.S. 658, 694 (1978). However, a municipality may be sued "when execution of [the municipality's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official**

**policy, inflicts the injury . . . ."** ***Id.*** **This is commonly referred to as a** ***Monell*** **claim (i.e., a section 1983 claim brought against a municipality).**

**Plaintiffs theory of liability focuses on the Town's purported failure to properly train its police officers. "[T]here are limited circumstances in which an allegation of a "failure to train" can be the basis for liability under § 1983."** ***City of Canton, Ohio v. Harris*****, 489 U.S. 378, 387 (1989). However, a failure to train theory of liability is a demanding standard that requires specific factual showings. A municipality may be liable where "the failure to train amounts to deliberate indifference to the rights" of those with whom municipal employees will come in contact with.** ***Id.*** **at 388. The plaintiff must identify the deficiency in the training program and must establish that said deficiency is closely related to the ultimate injury.** ***Id.*** **at 391. Satisfaction of this demanding standard is necessary, because without such a standard "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident."** ***Id.*** **at 392. Said outcome would be contrary to well established law that "a municipality cannot be held liable** ***solely*** **because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a** ***respondeat superior*** **theory."[5]** ***Monell*****, 436 U.S. at 691.**

**Here, Plaintiffs have presented no evidence of what training program is inadequate or lacking. Nor do Plaintiffs present any evidence of how the deficiency**

---

**[5]** ***Respondeat superior*** **is Latin for "let the superior make answer," and is "the doctrine holding an employer or principle liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency."** ***Respondeat Superior*****, Black's Law Dictionary, (11th ed. 2019).**

was closely related to the alleged constitutional violations. Plaintiffs' only evidence upon which they rely to establish liability against the Town, as distinguished from the specific officers involved in the alleged constitutional violation, is in their own affidavits. In their affidavits the only allegation that could be construed to support their *Monell* claim, particularly the knowledge requirement, is that: "Chief Edward Lennon of EHPD knew that EHPD had engaged in pattern or practices of misconduct that deprive Plaintiffs of privilege of rights, and constitution of laws by United States." (J. Alexander Aff. ¶ 4; S, Alexander Aff. ¶ 4.) This is a conclusory allegation because it is replete with labels and legal conclusions, without providing any specific factual evidence. In addition, the evidence does not support the legal claim as Plaintiffs provide no evidence to establish how they would know this fact to be true.[6] Plaintiffs cannot rely on conclusory allegations and unsupported evidence to defeat the motion for summary judgment.

---

[6] Rule 56(c)(4) of the Federal Rules of Civil Procedure requires "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of facts as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for the purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Rule 56(e). The Court gave Plaintiffs an opportunity to properly support and address the fact when it afforded Plaintiffs an additional twenty-one days to supplement their briefing. (Order for Suppl. Opp.) The Court deems the failure to support the allegations justifies disregarding the allegations as conclusory and unsupported.

**Plaintiffs' claim in their opposition that "The Town of East Haven training program was inadequate for the tasks that officers must perform. . . . The inadequacy was the result of the Town of East Haven['s] deliberate indifference. . . . [T]he inadequacy was closely related to or actually caused the injury." (Suppl. Opp., 8.) Plaintiffs provide no citation to the record, nor do they provide any specific factual argument to support these claims. Rather, Plaintiffs are arguing that the Town must have an inadequate training program by the mere fact that the alleged constitutional violations against them occurred. This argument fails, as the Supreme Court explained in *City of Canton*, the fact that "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390. The Court further explained:**

> **It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.**

***Id. See also Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997) ("Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."). Thus, to the extent Plaintiffs**

are arguing that the Town has an inadequate training program simply because of the alleged constitutional violations against them, that argument fails. Plaintiffs have not presented any other theory of liability against the Town under section 1983.

Therefore, the Court finds that the Town is entitled to summary judgment on Count Two of the complaint as Plaintiff has failed to allege a legally or factually supported claim for liability against the Town under section 1983.

C. Count III: State Common Law Intentional Infliction of Emotional Distress

Count Three raises a claim of "emotional distress," which is reasonably interpreted in light of the allegations of the complaint as a claim for intentional infliction of emotional distress under Connecticut common law. The Town's original motion for summary judgment did not address this claim. In Plaintiffs' opposition, they assert that they are raising this claim as a separate count of the complaint. (Opp., 8–9.) The Town filed a reply arguing first, that Plaintiffs are raising this claim for the first time in their opposition and the Court should not consider said claim as properly raised. The Town also argues, alternatively, that this claim fails as a matter of law.

The Court rejects the Town's first argument, because Plaintiffs did raise their "emotional distress" claim in the original complaint. (*See* Compl. 3.) While the complaint is not as artfully worded or expressly defined as one would expect from a complaint drafted by a trained legal professional, as explained above, Plaintiff's pro se status affords them some leeway in how their pleadings are to be

**interpreted. The Court finds the complaint can be reasonably interpreted as raising a claim for intentional infliction of emotional distress against the Town.**

**However, Plaintiffs cannot succeed on this claim because, "[u]nder Connecticut law, municipal governments may not be held liable for the intentional torts of their employees."** ***Larsen v. Berlin Bd. of Educ.*****, 588 F. Supp. 3d 247, 263 (D. Conn. 2022) (citing to Conn. Genn. Stat. § 52-557n(a)(2)(A)). "It is well established that Connecticut's grant of governmental immunity extends to claims for intentional infliction of emotional distress."** ***See Pane v. City of Danbury*****, 267 Conn. 669, 685–86 (2004),** ***overruled on other grounds by Grady v. Town of Somers*****, 294 Conn. 324 (2009). Thus, Plaintiffs claim of intentional infliction of emotional distress against the Town fails as a matter of law.**

**Therefore, the Town is entitled to summary judgment on Count Three of the complaint because the Town cannot be liable for intentional infliction of emotional distress performed by its employees.**

## IV. CONCLUSION

**For the above reasons, the Towns motion for summary judgment is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant and close the case.**

**IT IS SO ORDERED.**

Vanessa L. Bryant

Digitally signed by Vanessa L. Bryant
Date: 2023.01.03 14:48:11 -05'00'

**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated this day in Hartford, Connecticut: January 3, 2023**